UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| HOSSEIN KAVEH; FARANAK SEDARAT; and BANOU AFSAR SEDARAT,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION; and DOES 1-10,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION TO DISMISS (DOC. NO. 8)**<br><br>Case No. 2:24-cv-00291<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

Hossein Kaveh, Faranak Sedarat, and Banou Afsar Sedarat filed this case against Starbucks Corporation, bringing discrimination and defamation claims in connection with an incident at a Starbucks location in Midvale, Utah.[1] Starbucks filed a motion to dismiss for failure to state a claim.[2] Where Plaintiffs have plausibly alleged some claims but failed to state a claim as to others, the undersigned recommends[3] the district judge grant in part and deny in part Starbucks' motion to dismiss—and dismiss certain claims without prejudice. Specifically, where Plaintiffs fail to allege any plausible disability or religious discrimination claims, these claims should be dismissed. But by

---

[1] (*See* Compl., Doc. No. 3; Am. Compl., Doc. No. 5.)

[2] (Mot. to Dismiss ("Mot."), Doc. No. 8.) After a hearing on the motion, the court took the matter under advisement. (*See* Min. Entry, Doc. No. 23.)

[3] This motion is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Doc. Nos. 19–20.)

alleging Starbucks treated a similarly situated individual outside Plaintiffs' protected class more favorably, Plaintiffs have stated race, ancestry, national origin, and ethnicity discrimination claims.  And Plaintiffs have stated a defamation claim by identifying statements a Starbucks employee made to police officers capable of sustaining a defamatory meaning.

## BACKGROUND

Taking Plaintiffs' allegations as true, Banou Afsar Sedarat is a "visibly disabled" woman who requires a cane or a walker to move around, while Hossein Kaveh and Faranak Sedarat are not disabled.[4]  All Plaintiffs "are of Persian ancestry, Muslim, middle-eastern descent and from Iran," and they speak English with "noticeable accents."[5]

According to the complaint, in November 2023, Plaintiffs purchased drinks at a Starbucks coffee shop and sat down at a table designated for use by patrons with disabilities.[6]  While Plaintiffs were sitting and conversing in "their native language, Farsi," a "white" "American" woman in a motorized wheelchair approached them and "demanded possession" of the table where Plaintiffs were sitting.[7]  This other customer, the complainant, "loudly exclaimed" that Plaintiffs could not sit at the table because they

---

[4] (*See* Am. Compl. ¶¶ 11, 61, Doc. No. 5.)

[5] (*Id.* ¶¶ 17–18.)

[6] (*Id.* ¶¶ 19, 24.)

[7] (*Id.* ¶¶ 23–24, 34.)

were not disabled.[8]  To avoid the trouble of moving Banou,[9] Hossein and Faranak asked non-disabled patrons sitting at another table designated for patrons with disabilities to relocate, so the other customer could sit there.[10]  The non-disabled patrons agreed to move, and the complainant sat at the other designated table.[11]

The other customer nevertheless continued to "complain[] loudly" to Starbucks staff that Plaintiffs should not sit at a table designated for disabled patrons where they were not disabled.[12]  According to Plaintiffs, the woman's "continued disruptive complaining . . . led [] Starbucks management to call the police."[13]  After two police officers arrived, one asked a Starbucks employee whether he wanted the officers to ask Plaintiffs to leave and wanted them "trespassed."[14]  The employee nodded in response

---

[8] (*Id.* ¶ 25.)

[9] Because two of the plaintiffs share a last name, first names are used throughout this order, for clarity.

[10] (Am. Compl. ¶ 26, Doc. No. 5.)

[11] (*Id.* ¶¶ 26–27.)

[12] (*Id.* ¶ 28.)

[13] (*Id.* ¶ 29.)

[14] (*See* Ex. A to Mot., "Body Camera Footage" 00:01–50, Doc. No. 9 (nonelectronic exhibit on file with the clerk's office.)  Starbucks submitted the body camera footage as an exhibit to its motion to dismiss.  Where Plaintiffs reference the body camera footage in their complaint and do not dispute its authenticity, the court relies on the footage when assessing the motion.  (*See* Am. Compl. ¶ 36, Doc. No. 5 (referencing "law enforcement body-cam footage")); *see also Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 U.S. App. LEXIS 39942, at *6 (10th Cir. Nov. 10, 2021) (unpublished) (relying on body camera footage under motion to dismiss standard because a court may "consider documents referred to in the complaint if the documents are central to the

to both questions and told the officers "we've had multiple incidents with [Plaintiffs]."[15] Plaintiffs contend this statement is false and was made "to legally justify Plaintiffs' ejection" from the store.[16]  Plaintiffs allege the officers then "removed Plaintiffs from their seats" at the table, "including Ms. Banou Afsar Sedarat who required assistance to stand up and walk, and escorted all Plaintiffs out of the [s]tore."[17]  Once outside, the officers informed Plaintiffs that Starbucks was exercising its "private property right[] to ban Plaintiffs" from returning.[18]  The complainant was not escorted out nor banned from the store.[19]

Plaintiffs allege this incident caused them "significant suffering, humiliation, embarrassment, and severe and irreparable emotional distress . . . including continued fear of arrest, retaliation and discrimination" if they were to return to the store.[20] Plaintiffs bring claims for disability discrimination under Title III of the Americans with Disabilities Act[21] ("ADA"); race, ancestry, and ethnicity discrimination under 42 U.S.C.

---

plaintiff's claim and the parties do not dispute the documents' authenticity" (citation omitted)).

[15] (Body Camera Footage 00:43–50, Doc. No. 9 (nonelectronic exhibit on file with the clerk's office).)

[16] (Am. Compl. ¶ 30, Doc. No. 5.)

[17] (*Id.* ¶ 31.)

[18] (*Id.* ¶ 35.)

[19] (*Id.* ¶ 34.)

[20] (*Id.* ¶ 38.)

[21] 42 U.S.C. §§ 12181, et seq.

§ 1981; race, national origin, religion, and color discrimination under Title II of the Civil Rights Act of 1964[22]; race, ancestry, national origin, religion, and color discrimination under the Utah Civil Rights Act[23]; and defamation under Utah state law.[24]  Plaintiffs seek $6 million in compensatory damages, in addition to punitive damages, attorney's fees and court costs, and a public apology "with an invitation for Plaintiffs to return" to the store and "a commitment to rectify discriminatory policies and bias throughout Starbucks."[25]  Defendants move for dismissal of the entire complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Plaintiffs fail to state any claim upon which relief can be granted.[26]

## LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[27]  At the motion to dismiss stage, the court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[28]  But

---

[22] 42 U.S.C. §§ 2000a, et seq.

[23] Utah Code §§ 13-7-1, et seq.

[24] (Am. Compl. ¶¶ 39–134, Doc. No. 5.)

[25] (*Id.* at 18.)

[26] (*See* Mot. 23, Doc. No. 8.)

[27] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[28] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

the court need not accept a plaintiff's conclusory allegations as true.[29]  "[A] plaintiff must offer specific factual allegations to support each claim,"[30] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[31]

<u>ANALYSIS</u>

As explained below, Plaintiffs fail to allege plausible disability or religious discrimination claims.  But Plaintiffs adequately allege a defamation claim as well as race, ancestry, ethnicity, national origin, and color discrimination claims.

## I.    ADA claim

Plaintiffs first bring a claim under Title III of the ADA, which prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations.[32]  To state a claim under Title III, "a plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."[33]  Discrimination

---

[29] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[30] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[32] *See* 42 U.S.C. § 12182(a).

[33] *Martinez v. Lea Reg'l Hosp. LLC*, No. 2:21-cv-1191, 2022 U.S. Dist. LEXIS 224446, at *19 (D.N.M. Dec. 12, 2022) (unpublished) (quoting *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95–96 (2d. Cir. 2012)).  Because Banou is the only disabled plaintiff, Hossein

includes the "failure to make reasonable modifications in policies, practices, or procedures," when such modifications are necessary accommodations to individuals with disabilities.[34]  Discrimination also includes the failure to ensure that no disabled individual is denied services or otherwise treated differently "because of the absence of auxiliary aids and services."[35]  Plaintiffs fail to state a claim under Title III of the ADA.[36]

Where the parties do not dispute that Banou is disabled or that Starbucks operates a place of public accommodation,[37] the only issue is whether Plaintiffs plausibly allege Starbucks discriminated against them within the meaning of the ADA. Starbucks argues "the factual allegations asserted do not support a claim or even a reasonable inference that Starbucks [] failed to provide ADA accommodations" or

---

and Faranak's associational ADA discrimination claims can only proceed if Banou's claim proceeds.  (*See* Am. Compl. ¶ 41, Doc. No. 5 (asserting associational discrimination claims on behalf of Hossein and Faranak)); *see also* 42 U.S.C. § 12182(b)(1)(E) (prohibiting discrimination based on "the known disability of an individual with whom the individual or entity is known to have a relationship or association").

[34] 42 U.S.C. § 12182(b)(2)(A)(ii).

[35] 42 U.S.C. § 12182(b)(2)(A)(iii).

[36] At the outset, Title III of the ADA permits only injunctive relief—it does not permit monetary damages.  *See Shelton v. Café Rio, Inc.*, No. 1:17-cv-00070, 2017 U.S. Dist. LEXIS 163866, at *6 (D. Utah Oct. 2, 2017) (unpublished) ("It is well established that Title III of the ADA only allows for injunctive relief and not monetary damages."). Accordingly, even if Plaintiffs stated a claim under Title III, the claim would be limited to injunctive relief.

[37] (*See* Mot. 9–10, Doc. No. 8; Pls.' Opp'n and Mem. to Def.'s Mot. to Dismiss ("Opp'n") 8–9, Doc. No. 16.)

otherwise discriminated against Plaintiffs.[38]  Instead, Starbucks contends, the allegations show Plaintiffs were "enjoying the ADA accommodations provided by Starbucks when they were asked to leave following a disruptive incident initiated by a woman in a motorized wheelchair who repeatedly and loudly complained to management."[39]

In response, Plaintiffs argue their complaint sufficiently alleges Starbucks discriminated against them by failing to "make reasonable modifications to protect Plaintiffs' rights under the ADA."[40]  Specifically, Plaintiffs assert that when the complainant demanded Plaintiffs vacate their table designated for patrons with disabilities, Starbucks failed to "make any meaningful or reasonable modifications to policies or procedures to accommodate Plaintiffs or their disability."[41]  Instead, "Starbucks resorted to call[ing] the police to trespass and eject Plaintiffs against their will while" allowing the complainant to "continue to avail herself of the store's [] amenities."[42]  Plaintiffs contend this constitutes discrimination under the ADA.[43]

Plaintiffs fail to adequately allege discrimination under Title III of the ADA.  To proceed under the theory that Starbucks failed to "make any meaningful or reasonable

---

[38] (Mot. 9–10, Doc. No. 8.)

[39] (*Id.* at 10.)

[40] (Opp'n 9–10, Doc. No. 16.)

[41] (*Id.* at 10.)

[42] (*Id.*)

[43] (*Id.*)

modifications to policies or procedures to accommodate Plaintiffs or their disability,"[44] Plaintiffs must allege they requested and were denied a reasonable policy modification.[45] But Plaintiffs fail to do so. Plaintiffs do not even identify a Starbucks policy, let alone allege they requested a reasonable policy modification for purposes of facilitating their access to public accommodations. Accordingly, Plaintiffs have failed to adequately allege this theory of discrimination.

Discrimination under Title III also includes the "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."[46] It is unclear whether Plaintiffs are attempting

---

[44] (*Id.*; *see also id.* at 9 ("Plaintiffs have sufficiently alleged that Defendant failed to make reasonable modifications to accommodate their disability."); Am. Compl. ¶ 50, Doc. No. 5 ("Starbucks failed to make reasonable modifications in policies, practices or procedures necessary to afford Ms. Banou Afsar Sedarat the goods, services, facilities, privileges, advantages, or accommodations of the [s]tore.").)

[45] *See Rowley v. State Human Servs. Dep't*, No. 19-0683, 2021 U.S. Dist. LEXIS 204957, at *66 (D.N.M. Oct. 25, 2021) (unpublished) (dismissing complaint for failure to state a claim because the plaintiff did not allege she requested a modification or that such a request was reasonable); *Crawford v. Uber Techs.*, 616 F. Supp. 3d 1001, 1007 (N.D. Cal. 2022) ("An essential element of the reasonable modification claim is that a plaintiff has requested and been denied a modification from the defendant before filing suit."); *see also Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012) ("Indeed, Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the [public accommodation at issue].").

[46] 42 U.S.C. § 12182(b)(2)(A)(iii).

to raise this theory of discrimination.[47]  To the extent they are, Plaintiffs' claim fails.

Plaintiffs do not allege Starbucks treated them differently *because of the absence of*

*accommodations*—indeed, Plaintiffs acknowledge Starbucks provided multiple tables for

patrons with disabilities.[48]  If people could claim discrimination based on the absence of

auxiliary aids upon being excluded from a property, private property owners could never

exclude people with disabilities—because exclusion necessarily prevents access to

accommodations on the property.  This position is untenable.  The ADA requires

Starbucks to provide reasonable accommodations to disabled patrons; it does not grant

disabled patrons absolute immunity from Starbucks' private property right to exclude.

Accordingly, the discrimination theory that Plaintiffs were "treated differently than other

individuals *because of the absence of auxiliary aids and services*"[49] is inapplicable.

To the extent Plaintiffs argue Starbucks treated them less favorably than other

patrons because Banou is disabled,[50] this theory also fails.  To raise a disparate

---

[47] (*See* Am. Compl. ¶ 49 (claiming "Defendant Starbucks failed to provide services and reasonable accommodation to Plaintiff Banou Afsar Sedarat" by denying Plaintiffs the use of a table designated for disabled patrons).)

[48] (*See id.* ¶ 26.)

[49] 42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added).

[50] (*See* Am. Compl. ¶ 33 (alleging "Starbucks treated, and continues to treat, Plaintiffs less favorably than other patrons based on Ms. Banou Afsar Sedarat's disability"), ¶ 56 (alleging Starbucks denied Plaintiffs "equal access to the goods, services, facilities, privileges, advantages and accommodations of Starbucks as required under the ADA"), Doc. No. 5; Opp'n 9, Doc. No. 16 (arguing "Plaintiffs have also sufficiently alleged that Defendant took adverse actions against them and that it was plausibly based on their disability by denying them full and equal enjoyment of the goods, services, and facilities of the Starbucks store"); *see also Martinez*, 2022 U.S. Dist. LEXIS 224446 at *20

treatment theory under the ADA, Plaintiffs must allege Starbucks treated a non-disabled but otherwise similarly situated individual more favorably.[51]  The comparator must be similarly situated "in all relevant respects."[52]  Here, the complainant is not an appropriate comparator because she is also disabled[53]—preferential treatment of one disabled individual over another cannot demonstrate discrimination *on the basis of disability*.[54]  And although Plaintiffs generally allege Starbucks treated them "less favorably than other patrons based on [Banou's] disability,"[55] this allegation is

---

(suggesting a plaintiff may show discrimination under Title III of the ADA through a disparate treatment theory).

[51] *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014) ("[T]o raise the specter of discrimination through disparate treatment a plaintiff must allege facts suggesting non-disabled—but otherwise similarly situated—[individuals] receive[d] more favorable treatment.").

[52] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[53] (*See* Am. Compl. ¶ 55, Doc. No. 5 ("Plaintiffs did not engage in any hostile behavior but rather sought to assist the Offending Customer locate [sic] the [s]tore's other . . . table so all disabled parties could benefit.").)  Plaintiffs contend in their opposition that the complainant "was not disabled," (Opp'n 9, Doc. No. 9), but at the hearing, Plaintiffs' counsel clarified that this was an error—Plaintiffs acknowledge the complainant was disabled.

[54] *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 n.4 (10th Cir. 1997) (noting preferential treatment of other individuals who are also in the protected class "does not support an inference of discriminatory animus").  While preferential treatment of one class of disabled persons over another—for example, treating hearing-impaired patrons more favorably than sight-impaired patrons—could conceivably constitute disability discrimination, Plaintiffs do not raise such a theory.

[55] (Am. Compl. ¶ 33, Doc. No. 5).

conclusory—Plaintiffs do not explain how other patrons were similarly situated.[56]
Where Plaintiffs fail to assert facts supporting the claim that Starbucks treated them less
favorably than other patrons based on Banou's disability, any potential disparate
treatment theory fails.[57]  In sum, Plaintiffs fail to allege facts plausibly supporting any
theory of disability discrimination under Title III of the ADA.

## II.    42 U.S.C. § 1981 claims

Plaintiffs also bring claims for race, ancestry, and ethnicity discrimination under
42 U.S.C. § 1981.[58]  To state a claim under § 1981, a plaintiff must allege facts showing
"(1) that the plaintiff is a member of a protected class; (2) that the defendant had the
intent to discriminate on the basis of race; and (3) that the discrimination interfered with
a protected activity as defined in § 1981."[59]  The parties do not dispute whether
Plaintiffs are members of a protected class—only the second and third elements are at
issue.[60]

---

[56] See *Hwang*, 753 F.3d at 1164 (affirming dismissal where the plaintiff "pleaded no facts about the non-disabled [putative comparators], let alone facts suggesting they are like her in any relevant way").

[57] See *id.*

[58] (Am. Compl. ¶¶ 65–85, Doc. No. 5.)

[59] *Barfield v. Com. Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007) (quoting *Hampton v. Dillard Dep't Stores*, 247 F.3d 1091, 1102 (10th Cir. 2001)).

[60] (*See* Mot. 12, Doc. No. 8 (noting "Plaintiffs have alleged the first element").)

Starbucks contends Plaintiffs' allegations of discriminatory intent are conclusory and unsupported by any factual allegations.[61]  Starbucks also argues Plaintiffs fail to allege they were deprived of any right set forth in § 1981.[62]  Plaintiffs respond that their complaint adequately alleges that because of their race, ancestry, and ethnicity, Starbucks treated them less favorably than the "white and American" complainant by lying to police officers about their history at Starbucks and asking officers to remove them.[63]  Plaintiffs contend this discrimination interfered with their right to make and enjoy the benefits of contracts—a right § 1981 protects.[64]  Plaintiffs have sufficiently asserted a claim under § 1981.

### A.    Activities protected by § 1981

First, Plaintiffs properly allege deprivation of a right protected by § 1981.  The statute mandates equal right to "make and enforce contracts," which includes equal "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[65]  Plaintiffs adequately allege they entered into a contract with Starbucks

---

[61] (*Id.* at 10–14.)

[62] (*Id.* at 12–13.)

[63] (Opp'n 10–12, Doc. No. 16.)

[64] (*Id.* at 12.)

[65] 42 U.S.C. § 1981(a)–(b).

by purchasing a drink.[66]  By asserting Starbucks now refuses to serve them, Plaintiffs allege deprivation of the right to contract, as protected by § 1981.

### B.    Intent to discriminate

Section 1981 also requires Plaintiffs to assert facts plausibly showing Starbucks intentionally discriminated against them based on their protected status.  Plaintiffs must articulate facts showing that "but for" their race, ancestry, or ethnicity, they "would not have suffered the loss of a legally protected right."[67]  Discriminatory intent may be shown through direct or circumstantial evidence of discrimination—such as evidence a similarly situated individual outside the protected class was treated differently.[68]

Where Plaintiffs plausibly identify a comparator individual and allege Starbucks treated her more favorably, Plaintiffs' allegations are sufficient to survive a motion to dismiss.  Plaintiffs allege the "white and American" complainant was involved in the

---

[66] *See Barfield*, 484 F.3d at 1278 ("All courts to have addressed the issue have held that a customer's offer to do business in a retail setting qualifies as a . . . contractual relationship under § 1981."); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) ("[W]hen a merchant denies service or outright refuses to engage in business with a consumer attempting to contract with the merchant, that is a violation of § 1981.").

[67] *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 341 (2020).

[68] *See Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (noting a § 1981 plaintiff "may prove intentional discrimination under the second element with either direct evidence or circumstantial evidence"); *see also Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) ("Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.").

same disruptive incident leading to Plaintiffs' removal from the store.[69]  Plaintiffs also

allege Starbucks lied to police officers about Plaintiffs (but not about the other

customer), and Starbucks asked the officers to remove and ban Plaintiffs from the store

(but not the other customer).[70]  Where preferential treatment of a similarly situated

individual outside the protected class can show discriminatory intent, Plaintiffs have

plausibly alleged discriminatory intent based on race, ancestry, or ethnicity.[71]

      In arguing Plaintiffs' allegations fail to raise an inference of discrimination,

Starbucks relies on *Yusuf v. Vassar College*.[72]  In *Yusuf*, the plaintiff sued for racial

discrimination under § 1981 after a university disciplinary panel found him guilty of

sexual harassment.[73]  The Second Circuit found the district court properly dismissed the

§ 1981 claim, because the plaintiff "offered no reason to suspect that his being found

guilty of sexual harassment had anything to do with his race, other than his assertion

---

[69] (Am. Compl. ¶¶ 67, 71, 73, 77, 79, Doc. No. 5.)

[70] (*Id.* ¶ 74.)

[71] *See Int'l Brotherhood of Teamsters*, 431 U.S. at 335 n.15 (noting discriminatory intent "can in some situations be inferred from the mere fact of differences in treatment"); *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005) (noting that the discriminatory intent factor "may be (and often is) satisfied by" proof of disparate treatment); *see also Williams v. S. Ill. Riverboat/Casino Cruises, Inc.*, No. 06-cv-664, 2008 U.S. Dist. LEXIS 31309, at *17 (S.D. Ill. Apr. 16, 2008) (unpublished) ("In the context of the denial of the right to make or enforce a retail contract, [a § 1981 plaintiff must show:] (1) the plaintiff is a racial minority, (2) he attempted to make or enforce a contract, (3) the defendant denied him the right to make or enforce the contract and (4) the defendant treated the plaintiff less favorably than other white people who were similarly situated.").

[72] 35 F.3d 709 (2d Cir. 1994); (*see* Mot. 12–13, Doc. No. 8 (citing *Yusuf*, 35 F.3d at 713–14).)

[73] *Yusuf*, 35 F.3d at 714.

that the panel members were white and that he is Bengali."[74]  Starbucks contends that,

like the *Yusuf* plaintiff, "Plaintiffs have not offered facts to support their conclusory

assertion of racial discrimination."[75]  But the *Yusuf* plaintiff did not identify a similarly

situated individual outside his protected class who was treated differently.[76]  While here,

Plaintiffs plausibly identify a similarly situated comparator of another race, ancestry, and

ethnicity who was treated differently—making *Yusuf* inapplicable.[77]

Starbucks also argues Plaintiffs fail to plausibly show that *but for* Plaintiffs'

protected characteristics, their injuries would not have occurred—as required by

---

[74] *Id.*

[75] (Mot. 12, Doc. No. 8.)

[76] Indeed, the Second Circuit agrees that evidence of disparate treatment alone can raise an inference of discriminatory intent.  *See, e.g.*, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (acknowledging that § 1981 plaintiffs can raise an inference of discrimination by showing similarly situated patrons of another race were given preferential treatment); *Diggs v. Niagara Mohawk Power Corp.*, 691 F. App'x 41, 43 (2d Cir. 2017) (unpublished) ("A plaintiff may raise an inference of discrimination by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.").

[77] Additionally, several courts have suggested *Yusuf* asked too much of the plaintiff at the motion to dismiss stage, in light of subsequent jurisprudence on pleading standards. *See, e.g.*, *Reagor v. Okmulgee Cty. Family Res. Ctr., Inc.*, No. 12-CV-154, 2012 U.S. Dist. LEXIS 131899, at *14–15 (E.D. Okla. Sept. 17, 2012) (unpublished) (denying motion to dismiss where the plaintiff offered circumstantial evidence of disparate treatment, and noting "*Yusef* and its progeny has been implicitly overruled by the Supreme Court's ruling in *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506 (2002)]."); *Goldvekht v. United Fed'n of Tchrs.*, No. 08-CV-1494, 2009 U.S. Dist. LEXIS 3546, at *7–8 (E.D.N.Y. Jan. 20, 2009) (unpublished) ("Second Circuit cases such as *Yusuf*, which require a plaintiff to plead a prima facie case of discrimination in order to survive a motion to dismiss, were effectively overruled in *Swierkiewicz* . . . .").

*Comcast Corp. v. National Ass'n of African American Owned Media*.[78]  But Starbucks fails to acknowledge that circumstantial evidence can satisfy this requirement.  For example, the Sixth Circuit recently found a plaintiff satisfied *Comcast*'s but-for requirement by alleging the defendant made inaccurate statements about the plaintiff's minority owned-company—resulting in a white-owned company being selected for a government contract—where the companies "were the only two bidders being evaluated."[79]  Here, Plaintiffs allege Starbucks treated them less favorably than the "white and American" complainant (the only other person involved in the disruptive incident) by making inaccurate statements about Plaintiffs and removing and banning them from the store.[80]  Accordingly, Plaintiffs have plausibly alleged that but for their race, ancestry, or ethnicity, they would not have suffered the loss of their right to contract with Starbucks.

Finally, Starbucks contends Plaintiffs' allegations show they were removed due to the disruption in the store, not for some discriminatory reason.[81]  Starbucks points to Plaintiffs' assertion that they had previously "frequented this Starbucks store countless times for years, often enjoying services inside the [s]tore multiple times a week."[82]  But

---

[78] 589 U.S. 327; (*see* Mot. 13, Doc. No. 8 (citing *Comcast*, 589 U.S. at 341)).

[79] *See Inner City Contracting v. Charter Twp. of Northville*, 87 F.4th 743, 755–56 (6th Cir. 2023) (citing *Comcast*, 589 U.S. at 341).

[80] (Am. Compl. ¶¶ 67, 71, 73, 74, 77, 79, Doc. No. 5.)

[81] (Mot. 13–14, Doc. No. 8.)

[82] (*See id.* at 13 (quoting Am. Compl. ¶¶ 96, 124, Doc. No. 5).)

at the motion to dismiss stage, it is not the court's role to weigh the feasibility of the parties' offered explanations.  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."[83]  Indeed, the inference of intent need not even be "*the most plausible* explanation" so long as it is plausible.[84] Where Plaintiffs' allegations of differential treatment plausibly support an inference of discriminatory intent, dismissal at this stage is improper.

### III.    Federal and Utah Civil Rights Act claims

Plaintiffs also bring national origin, religion, race, and color discrimination claims under Title II of the federal Civil Rights Act, and national origin, religion, race, color, and ancestry discrimination claims under the Utah Civil Rights Act.[85]

Title II of the federal Civil Rights Act provides that all persons are "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."[86]  The Utah Civil

---

[83] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Rupp v. Pearson*, 658 F. App'x 446, 449 (10th Cir. 2016) (unpublished) (quoting *Starr*, 652 F.3d at 1216).

[84] *Rupp*, 658 F. App'x at 449 (emphasis in original) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016)); *see also id.* ("Our task is not to assess whether the claim is probable but whether the 'factual allegations in [the] complaint [are] enough to raise a right to relief above the speculative level.'" (alterations in original) (quoting *Kay*, 500 F.3d at 1218)).

[85] (Am. Compl. ¶¶ 86–108, 115–134, Doc. No. 5.)

[86] 42 U.S.C. § 2000a(a).

Rights Act similarly guarantees equal access "without discrimination on the basis of race, color, sex, pregnancy, religion, ancestry or national origin."[87]  Plaintiffs state discrimination claims under these statutes, similar to their claim under § 1981, by alleging facts plausibly showing Starbucks treated a similarly situated individual outside of Plaintiffs' protected class more favorably.[88]

In seeking dismissal of these claims, Starbucks reiterates the same central argument it raised regarding Plaintiff's § 1981 claims—"Plaintiffs have not alleged any facts [showing] that they were treated differently from similarly situated persons, or that any of the Starbucks manager's actions were motivated by discriminatory animus."[89] But as explained above, Plaintiffs adequately allege Starbucks treated them less favorably than the "white and American" complainant involved in the same disruptive incident.  Accordingly, Plaintiffs have stated plausible claims for national origin, race, ancestry, and color discrimination under Title II of the federal Civil Rights Act and the Utah Civil Rights Act.  However, where Plaintiffs do not allege the religion of any potential comparator or assert facts supporting an inference of religious discrimination,

---

[87] Utah Code § 13-7-3(1).

[88] *See Sussman v. Blazin Wings, Inc.*, No. 2:18-cv-00623, 2019 U.S. Dist. LEXIS 152248, at *8–10 (D. Utah Aug. 14, 2019) (unpublished) (noting a plaintiff can state claims under Title II and the Utah Civil Rights Act by alleging "he was treated less favorably than a similarly situated person outside of any protected class").

[89] (Mot. 14–15, Doc. No. 8.)

Plaintiffs fail to state a religious discrimination claim under the Title II of the federal Civil Rights Act or the Utah Civil Rights Act.[90]

### IV.    Defamation claims

Plaintiffs also bring a state law defamation claim, arguing a Starbucks employee made defamatory statements about Plaintiffs to the police officers.[91]  To state a defamation claim under Utah law, Plaintiffs must plausibly show the employee "published the statements concerning [them], that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault [negligence, where Plaintiffs are private individuals], and that their publication resulted in damage."[92]  Starbucks does not address whether its employee published the statements or was negligent in doing so.  However, Starbucks argues the statements are not defamatory, are pure opinion, and are protected by qualified privilege.  Viewing the assertions in the light most favorable to Plaintiffs, Plaintiffs have adequately stated a claim for defamation.

---

[90] *See, e.g.*, *Jaffe v. Birmingham Gastroenterology Assocs.*, No. 2:20-CV-01821, 2021 U.S. Dist. LEXIS 176427, at *7 (N.D. Ala. Sept. 16, 2021) (unpublished) (finding the plaintiff failed to state a religious discrimination claim where the complaint was "silent as to the religious adherence" of the potential comparators, because "it is imperative that her comparators be [of a different religion]").

[91] (Am. Compl. ¶¶ 109–14, Doc. No. 5.)  Where Plaintiffs have adequately stated federal claims, the court may exercise supplemental jurisdiction over state law claims arising out of the same controversy.  *See* 28 U.S.C. § 1367.

[92] *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994).

As an initial matter, Starbucks contends Plaintiffs misquote the employee's statement.[93]  In their complaint, Plaintiffs allege the "false and defamatory statements included, but are not limited to, false accusations that Plaintiffs had a history of causing trouble at the Starbucks store."[94]  The body camera footage shows the employee told the officer:  "We've had a few incidents with them before, but every time it's calmed down, this time it just kind of [inaudible]."[95]  The officer then asked:  "So do you want me to ask them to leave?"[96]  After the employee nodded and said "yeah," the officer asked:  "And you want them trespassed?"[97]  The employee nodded and responded:  "I think so, we've had multiple incidents with them and I think we're—it's kind of [inaudible]."[98] (Plaintiffs appear to have been paraphrasing the employee's statement in their complaint rather than directly quoting it.)  The defamation claim is addressed in light of what the employee actually said.[99]

---

[93] (*See* Mot. 22, Doc. No. 8.)

[94] (Am. Compl. ¶ 111, Doc. No. 5.)

[95] (Body Camera Footage 00:01–07, Doc. No. 9 (nonelectronic exhibit on file with the clerk's office).)

[96] (*Id.* at 00:36–39.)

[97] (*Id.* at 00:39–43.)

[98] (*Id.* at 00:43–50.)

[99] *See Est. of Harmon*, 2021 U.S. App. LEXIS 39942, at *6 ("Where there is video evidence, the court continues to accept all well-pleaded allegations as true unless they are 'blatantly contradicted by the record.'" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))).

A.    *Whether the statements are capable of defamatory meaning*

First, Starbucks argues the employee's statements are not defamatory because they do not impeach Plaintiffs' "honesty, integrity, virtue, or reputation" or expose them to "public hatred, contempt, or ridicule."[100]  Plaintiffs contend the statements are defamatory because "they were publicly humiliated and embarrassed" after the statements resulted in their "forcible removal from the store by law enforcement" and ban from the store.[101]

As Starbucks points out, "a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule."[102]  "[I]n determining whether a particular statement fits within the rather broad definition of what may be considered defamatory, the guiding principle is the statement's tendency to injure a reputation in the eyes of its audience."[103]  While the factfinder ultimately evaluates whether a statement actually defamed a plaintiff, "[w]hether a statement is capable of sustaining a defamatory meaning is a question of law."[104]  When assessing a statement's defamatory potential, "the First Amendment demands a subtle although significant variation in the treatment

---

[100] (*See* Mot. 16, Doc. No. 8 (quoting *West*, 872 P.2d at 1008).)

[101] (Opp'n 16, Doc. No. 16.)

[102] *Jacob v. Bezzant*, 2009 UT 37, ¶ 26, 212 P.3d 535 (quoting *West*, 872 P.2d at 1008).

[103] *West*, 872 P.2d at 1008.

[104] *Id.*

of inferences drawn" from a complaint.[105]  While courts still accept material allegations in complaints as true, courts do not interpret "inferences that may be reasonably drawn from the statements in favor of a defamatory meaning."[106]  Instead, courts must "look the context of the allegedly defamatory statement and then, in a nondeferential manner, 'reach an independent conclusion about the statement's susceptibility to a defamatory interpretation.'"[107]

The Starbucks employee's statements can sustain a defamatory meaning. Where the employee made the statements in response to the police officer's query whether Starbucks wanted Plaintiffs removed and "trespassed," the employee had every reason to expect his statements would cause Plaintiffs' removal from the store. Given this context, a factfinder could reasonably conclude the statements impeached Plaintiffs' reputation in the eyes of the officers.  Likewise, a factfinder could reasonably conclude Plaintiffs' public removal from the store by police officers—in a store full of other patrons—subjected Plaintiffs to public contempt or ridicule.  Viewed contextually, the statements can sustain a defamatory meaning.

---

[105] *Jacob*, 2009 UT ¶ 18 (citing *O'Connor v. Burningham*, 2007 UT 58, ¶ 24, 165 P.3d 1214).

[106] *Spencer v. Glover*, 2017 UT App 69, ¶ 5, 397 P.3d 780 (quoting *West*, 872 P.2d at 1004; *Jacob*, 2009 UT ¶ 18).

[107] *Id.* (quoting *Jacob*, 2009 UT ¶ 18); *see also West*, 872 P.2d at 1009 (noting the court "simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made").

### B.    Whether the statement is "pure opinion"

Starbucks next contends that even if the statements are defamatory, they are not actionable because they are "pure opinion."[108]  "[P]ure statements of opinion which cannot, by definition, be proven false" cannot constitute defamation because defamation requires falsity.[109]  But when a statement of opinion "states or implies facts that are false and defamatory," the statement is actionable defamation.[110]  Utah courts use four factors to distinguish fact from opinion:

> (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement—for example, the entire article or column—in which the defamatory statement is made; and (iv) the broader setting in which the statement appears."[111]

The ultimate inquiry is whether the statement is "sufficiently factual to be susceptible of being proven true or false."[112]

Whether Starbucks has "had multiple incidents with [Plaintiffs]" is sufficiently factual to be susceptible to verification.  "Incident" is defined as "an occurrence of an action or situation that is a separate unit of experience."[113]  In the context and setting

---

[108] (Mot. 17–19, Doc. No. 8.)

[109] *Davidson v. Baird*, 2019 UT App 8, ¶¶ 25, 31, 438 P.3d 928.

[110] *Id.* ¶ 31.

[111] *West*, 872 P.2d at 1018.

[112] *See id.* at 1019.

[113] Incident, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/incident [https://perma.cc/QS6Q-ZR8A] (last visited January 3, 2025).

where this statement was made (a coffee shop employee talking to police officers about a disruptive dispute between patrons), the statement could reasonably be interpreted as implying Plaintiffs were involved in disruptive situations previously.  The truth of this statement—whether Plaintiffs were involved in other disruptions at Starbucks—is verifiable.[114]  Accordingly, the employee's statements are "sufficiently factual to be susceptible of being proven true or false."[115]

Starbucks analogizes this case to *Spencer v. Glover*.[116]  In *Spencer*, the Utah Court of Appeals concluded a statement that the plaintiff was the "worst ever" was an expression of opinion.[117]  But the employee's statement that Starbucks "had multiple incidents with [Plaintiffs]" is simply not akin to a statement that someone is the "worst ever."  While "[t]he word 'worst' is a superlative" and "[t]here are no objective criteria from which to determine whether someone is the 'worst,'"[118] whether Starbucks has

---

[114] Starbucks acknowledges the statements "might be false."  (*See* Mot. 17, Doc. No. 8 ("While this statement might be false or embarrassing to Plaintiffs, it is not defamatory.").)

[115] *See West*, 872 P.2d at 1019.

[116] 2017 UT App 69, 397 P.2d 780; (Mot. 19, Doc. No. 8 (citing *Spencer*, 2017 UT App ¶ 12)).

[117] *Spencer*, 2017 UT App ¶ 12.

[118] *Id.*

"had multiple incidents" with Plaintiffs is capable of verification.  It is not a statement of pure opinion.

    B.    *Qualified privilege*

Next, Starbucks argues that even if the statement was defamatory, it is protected by qualified immunity (also known as qualified privilege), because its employee was reporting suspected criminal conduct to the police officers.[119]  Plaintiffs contend there is no such privilege[120] but they are incorrect.  There is no question "an individual reporting suspected criminal conduct to police authorities is entitled to qualified immunity for erroneous statements."[121]  Nevertheless, Plaintiffs' defamation claim cannot be dismissed on the basis of qualified privilege at this stage.

As an initial matter, qualified privilege is an affirmative defense which generally cannot be raised at the motion to dismiss stage.[122]  "[I]t is only proper to dismiss a

---

[119] (Mot. 19, Doc. No. 8 (quoting *Murphree v. First Utah Bank*, 293 F.3d 1220, 1222 (10th Cir. 2002)).)

[120] (*See* Opp'n 16, Doc. No. 16 ("Defendant incorrectly argues that its statements made to police are somehow barred by the legal doctrine of qualified immunity.  However, the legal concept of qualified immunity is not applicable to the merits of this case.  Rather, qualified immunity is a legal construct that applies to protect law enforcement acting under color of state law from liability for civil damages.  All references of qualified immunity in Defendant's Dismissal Motion are baseless and the motion should be denied." (citations omitted)).)  At the hearing, Plaintiffs' counsel reiterated this position.

[121] *Murphree*, 293 F.3d at 1222.

[122] *See Jones v. Suntec Concrete, Inc.*, No. 2:22-cv-00271, 2023 U.S. Dist. LEXIS 145603, at *3 (D. Utah Aug. 17, 2023) (unpublished) (denying motion to dismiss defamation claim based on qualified privilege, because it "is an affirmative defense to defamation that a defendant must raise in its answer" (quoting *Zoumadakis v. Uintah Basin Med. Ctr.*, 2005 UT App 325, ¶ 7, 122 P.3d 891); *see also LeSure v. Walmart*,

complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense."[123]  But that is not the case here.  Under Utah law, qualified privilege does not protect statements made with "actual malice," which is present in statements made with "spite, ill will, or hatred."[124]  As noted above, Plaintiffs have alleged the employee harbored discriminatory intent, which, if true, could constitute malice sufficient to overcome qualified privilege.[125]  Accordingly, dismissal at this stage is improper.[126]

---

No. 21-cv-472, 2022 U.S. Dist. LEXIS 151851, at *31 (E.D. Wis. Aug. 24, 2022) (unpublished) (noting qualified privilege for erroneous reports of suspected criminal conduct to police cannot be raised in a motion to dismiss).

[123] *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (noting "Utah law, which governs what party bears the ultimate burden of proof on this issue, is to the same effect"); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004))).

[124] *Thomas v. Pacificorp*, 324 F.3d 1176, 1181 (10th Cir. 2003) (citing *Combes v. Montgomery Ward & Co.*, 119 Utah 407, 416, 228 P.2d 272 (1951)).

[125] *See, e.g.*, *Aromashodu v. Swarovski N. Am.*, 981 N.W.2d 791, 799 (Minn. Ct. App. 2022) ("We hold that the applicability of qualified privilege in a defamation action based on race discrimination cannot be determined as a matter of law where a genuine dispute of fact exists as to whether the defamatory statement was motivated by discriminatory animus."); *Duncan v. City of Hammond*, No. 08-5043, 2009 U.S. Dist. LEXIS 140894, at *11–12 (E.D. La. July 8, 2009) (unpublished) (denying motion to dismiss a defamation claim based on qualified privilege, because the plaintiff alleged the defendant made a false report to police based solely on the plaintiff's race).

[126] *See Bistline*, 918 F.3d at 876; *Fernandez*, 883 F.3d at 1299.

## V.    Attorney's fees

Finally, both parties seek attorney's fees.  Starbucks seeks fees under 42 U.S.C.

§ 12205, which provides for an award of attorney's fees to the "prevailing party" in ADA

cases.[127]  Starbucks also seeks fees under 28 U.S.C. § 1927, which provides for an

award of fees when an attorney "multiplies the proceedings in any case unreasonably

and vexatiously."[128]  Starbucks contends Plaintiffs are multiplying proceedings

unreasonably and vexatiously by opposing its motion to dismiss.[129]  For their part,

Plaintiffs also vaguely ask the court to "award attorney's fees to Plaintiff[s]."[130]

Neither party is entitled to attorney's fees at this stage.  Fees under 42 U.S.C.

§ 12205 are improper because there is no "prevailing party" yet.[131]  Similarly, where the

undersigned is recommending Starbucks' motion be denied in part, Plaintiffs' opposition

to the motion does not constitute multiplying these proceedings "unreasonably and

---

[127] 42 U.S.C. § 12205; (*see* Mot. 21–22, Doc. No. 8).

[128] 28 U.S.C. § 1927; (*see* Mot. 22–23, Doc. No. 8).

[129] (Mot. 23, Doc. No. 8); *see also Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006) (noting § 1927 "necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until *after* those proceedings have begun" (emphasis in original)).

[130] (Opp'n 17, Doc. No. 16.)

[131] *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) (noting that "usually the litigant in whose favor judgment is rendered is the prevailing party"); *see also EEOC v. TriCore Reference Labs.*, 493 F. App'x 955, 961 (10th Cir. 2012) (unpublished) (noting prevailing defendants may obtain attorney's fees under § 12205 only when "the plaintiff's action was frivolous, unreasonable, or without foundation," and "[o]nly in the rare case will this difficult standard be met" (citations omitted)).

vexatiously" under 28 U.S.C. § 1927.  Finally, where Plaintiffs do not explain what fees they seek or why they are entitled to such fees, no fee award is justified.

<u>RECOMMENDATION</u>

Plaintiffs' complaint states plausible claims for defamation and race, ancestry, ethnicity, national origin, and color discrimination.  However, Plaintiffs fail to plead plausible disability or religious discrimination claims.  Accordingly, the undersigned recommends the district court grant in part and deny in part Starbucks' motion to dismiss[132] and dismiss the following claims without prejudice:[133]

- Plaintiffs' disability discrimination claim under Title III of the Americans with Disabilities Act;[134] and

- Plaintiffs' religious discrimination claims under Title II of the Civil Rights Act and the Utah Civil Rights Act.[135]

---

[132] (Doc. No. 8.)

[133] Although Starbucks seeks dismissal with prejudice, (*see* Mot. 23, Doc. No. 8), dismissal with prejudice for failure to state a claim is proper only where "granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  Starbucks has not shown amendment would be futile.

[134] (*See* Am. Compl. ¶¶ 39–64, Doc. No. 5.)

[135] (*See id.* ¶¶ 86–108, 115–134.)

The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[136]

DATED this 3rd day of January, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[136] *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).